**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>AMBOY GROUP, LLC, *et al.,*<br><br>     Debtors. | Case No. 17-31653 (CMG) (Jointly Administered)<br><br>Chapter 11 |
| AMBOY GROUP, LLC,<br><br>            Appellant,<br>   vs.<br><br>PARMACOTTO AMERICA, INC.<br>and PARMACOTTO SPA,<br><br>       Appellees. | Civ. Action No. 3:18-cv-13315-FLW |

**BRIEF OF APPELLANT IN SUPPORT OF APPEAL**

**McMANIMON, SCOTLAND &**
  **BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
Anthony Sodono, III
Henry M. Karwowski
Sari B. Placona
Counsel to Appellant Amboy Group, LLC

## CORPORATE DISCLOSURE STATEMENT UNDER BANKRUPTCY RULE 8012

No parent corporation or publicly held corporation owns 10% or more of the stock or ownership interest in Appellant Amboy Group, LLC.

**McMANIMON, SCOTLAND &**
**BAUMANN, LLC**
Attorneys for Appellant Amboy Group, LLC


By:  /s/ Anthony Sodono, III____
Anthony Sodono, III

## TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ................................................................................... 1

    A.    Statement of Basis for Bankruptcy Court's Subject-Matter Jurisdiction. ........................ 1

    B.    Statement of Basis for District Court's Jurisdiction. ....................................................... 1

    C.    Filing Dates Establishing Timeliness of Appeal. ............................................................. 2

    D.    Statement Establishing that Appeal Is From Final Order. ............................................... 2

STATEMENT OF ISSUES PRESENTED ...................................................................... 3

STATEMENT OF APPLICABLE STANDARD OF APPELLATE REVIEW ........................... 3

STATEMENT OF THE CASE ......................................................................................... 4

    Background ..................................................................................................................... 4

    PAI Fails to Comply with the Agreement. ...................................................................... 5

    The Debtor Files Petition; Bankruptcy Court Grants Parmacotto's Motion
    and Denies the Debtor's Cross-Motion. ......................................................................... 8

SUMMARY OF THE ARGUMENT ............................................................................... 10

LEGAL ARGUMENT .................................................................................................... 10

POINT I ......................................................................................................................... 10

THE BANKRUPTCY COURT ERRED IN FINDING THAT PARMACOTTO
ESTABLISHED CAUSE FOR RELIEF FROM THE AUTOMATIC STAY. ......................... 10

POINT II ........................................................................................................................ 15

THE BANKRUPTCY COURT ERRED IN DECLINING TO EXTEND
THE AUTOMATIC STAY TO INCLUDE THE LLC AND THE MACHINE. ...................... 15

CONCLUSION ............................................................................................................... 16

CERTIFICATE OF COMPLIANCE WITH BANKRUPTCY RULE 8015(a)(7) .................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,
  682 F.2d 446 (3d Cir. 1982)...............................................................11

Borman v. Raymark Indus., Inc.,
  946 F.2d 1031 (3d Cir. 1991)..............................................................11

Constitution Bank v. Tubbs,
  68 F.3d 685 (3d Cir. 1995)....................................................................3

First Fidelity Bank, N.A. v. Mulroy,
  1993 WL 235662 (D.N.J. June 21, 1993) ..............................................3

FRG, Inc. v. Manley,
  919 F.2d 850 (3d Cir. 1990)..................................................................1

In re Connors,
  497 F.3d 314 (3d Cir. 2007)..................................................................1

In re Curtis,
  40 B.R. 795 (Bankr. D. Utah 1984) ....................................................12

In re Gannon,
  25 B.R. 360 (Bankr. D.N.J. 1982) ......................................................14

In re Gershenbaum,
  598 F.2d 779 (3d Cir. 1979)................................................................14

In re Gyro-Trac (USA), Inc.,
  441 B.R. 470 (Bankr. D.S.C. 2010) ....................................................13

In re Kane,
  628 F.3d 631 (3d Cir. 2010)..................................................................3

In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,
  142 F.2d 631(3d Cir. 1998).................................................................11

In re Pine Trace Corp.,
  87 B.R. 695 (Bankr. M.D. Fla. 1988) ..................................................14

In re RNI Wind Down Corp.,
  348 B.R. 286 (Bankr. D. Del. 2006) ....................................................10

In re Ronald Perlstein Enters., Inc.,
  70 B.R. 1005 (Bankr. E.D. Pa. 1987) ..................................................12

In re Telegroup,
  237 B.R. 87 (Bankr. D.N.J. 1999) ......................................................12

In re Tudor Motor Lodge Assocs. Ltd. P'ship,
  102 B.R. 936, 954 (Bankr. D.N.J. 1989) ............................................13

In re Ward,
  837 F.2d 124 (3d Cir. 1988)................................................................10

In re West Elecs. Inc.,
  852 F.2d 79 (3d Cir. 1988)....................................................................1

John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.,
  987 F.2d 154 (3d Cir. 1993)..................................................................1

Johns-Manville Corp v. Asbestos Litig. Group (In re Johns-Manville Corp.),

26 B.R. 420 (Bankr. S.D.N.Y. 1983) ................................................................ 15

Maritime Elec. Co. v. United Jersey Bank,
959 F.2d 1194 (3d Cir. 1991).................................................................. 3, 11

McCartney v. Integra Nat'l Bank North,
106 F.3d 506 (3d Cir. 1997)......................................................................... 15

Midlantic Nat'l Bank v. DeSeno (In re DeSeno),
17 F.3d 642 (3d Cir. 1994).......................................................................... 3, 11

Moxley v. Comer (In re Comer),
716 F.2d 168 (3d Cir. 1983)............................................................................ 1

Process Am., Inc. v. Cynergy Holdings, LLC,
839 F.3d 125 (2d Cir. 2016) .......................................................................... 13

Prudential Ins. Co. of Am. v. Erie Hilton Joint Venture (In re Erie Hilton Joint Venture),
112 B.R. 750 (Bankr. W.D. Pa. 1990) ........................................................... 14

Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),
16 F.3d 552 (3d Cir. 1994)............................................................................... 1

## STATUTES

11 U.S.C. § 362(d)(2) ...................................................................................... 13
28 U.S.C. § 157(b)(2) ........................................................................................ 1
28 U.S.C. § 158(a) ............................................................................................ 1

## OTHER AUTHORITIES

1978 U.S.C.C.A.N. 5787, 5835 ....................................................................... 11
1978 U.S.C.C.A.N. 5787, 5840-41 .................................................................. 11

## RULES

Fed. R. Bankr. P. 8002(a)(1)............................................................................. 2

## JURISDICTIONAL STATEMENT

**A.      Statement of Basis for Bankruptcy Court's Subject-Matter Jurisdiction.**

Under section 157(b) of title 28, a bankruptcy court may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. § 157(b)(1).  Core proceedings include but are not limited to motions to terminate, annul, or modify the automatic stay.  28 U.S.C. § 157(b)(2).

Here, Appellant Amboy Group, LLC appeals from (i) an Order Granting Relief from the Automatic Stay; and (ii) an Order Denying a Cross-Motion to Extend the Automatic Stay.  It is undisputed that the Bankruptcy Court had subject matter jurisdiction to enter these Orders as core proceedings under section 157(b)(2).

**B.      Statement of Basis for District Court's Jurisdiction.**

Under section 158(a) of title 28, the district court has jurisdiction to hear appeals from final judgments, orders, and decrees.  28 U.S.C. § 158(a).  The Third Circuit has consistently held that an order relating to the automatic stay is a final order.  In re Connors, 497 F.3d 314, 318 (3d Cir. 2007) (order granting relief from automatic stay); Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 559 n.4 (3d Cir. 1994) (order denying relief from automatic stay); John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs., 987 F.2d 154, 157 (3d Cir. 1993) (order denying relief from automatic stay); FRG, Inc. v. Manley, 919 F.2d 850, 852 n.1 (3d Cir. 1990) (order granting directed verdict permanently barring secured creditor from obtaining relief from automatic stay); In re West Elecs. Inc., 852 F.2d 79, 82 (3d Cir. 1988) (order denying application to grant relief from automatic stay); Moxley v. Comer (In re Comer), 716 F.2d 168, 174 (3d Cir. 1983) (order denying relief from automatic stay).

Here, as set forth, above, Appellant Amboy Group, LLC appeals from Orders either granting or denying relief as to the automatic stay.  Thus, the Orders are final.  It follows that this Court has jurisdiction to hear this appeal.

**C.      Filing Dates Establishing Timeliness of Appeal.**

Under Bankruptcy Rule 8002(a), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree at issue.  Fed. R. Bankr. P. 8002(a)(1).

Here, the Bankruptcy Court entered the Order Denying the Cross-Motion to Extend the Automatic Stay on August 23, 2018 and the Order Granting Motion for Relief from Stay on August 28, 2018.  Order Denying Cross Motion Extending Stay (ECF 318); Order Granting Motion for Relief from Stay (ECF 339).  Appellant Amboy Group, LLC filed its Notice of Appeal with the Bankruptcy Court Clerk on August 28, 2018.  Notice of Appeal (ECF 337). Thus, Appellant's appeal is timely.

**D.      Statement Establishing that Appeal Is From Final Order.**

As set forth in subpart (B) above, this appeal is from final Orders of the Bankruptcy Court.  Thus, this Court has jurisdiction to review the Orders.

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred in granting Appellee relief from the automatic stay to retrieve certain machinery from the Debtor's facility.

2.      Whether the Bankruptcy Court erred in denying Appellant's Cross-Motion for extension of the automatic stay to include the machinery.

## STATEMENT OF APPLICABLE STANDARD OF APPELLATE REVIEW

A district court reviews *de novo* the bankruptcy court's conclusions of law, its factual findings for clear error, and its exercise of discretion for abuse.  In re Kane, 628 F.3d 631, 636 (3d Cir. 2010).  More specifically, a district court exercises plenary review of orders relating to the automatic stay.  See, e.g., Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d Cir. 1995) (citing Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1203 (3d Cir. 1991)); Midlantic Nat'l Bank v. DeSeno (In re DeSeno), 17 F.3d 642, 643 (3d Cir. 1994); First Fidelity Bank, N.A. v. Mulroy, 1993 WL 235662 at *1 (D.N.J. June 21, 1993).

Here, as set forth above, both Orders under review pertain to the automatic stay.  Thus, in reviewing the Orders, this Court should exercise plenary review.

## STATEMENT OF THE CASE

### Background

Appellant Amboy Group, LLC (the "Debtor") operates a food processing and storage facility located at 1 Amboy Avenue, Woodbridge, New Jersey 07095, at which it specializes in manufacturing and distributing Irish and Italian meat products throughout the United States. Certification of William Colbert in Support of Debtor's Petition and First Day Motions (ECF 13) ¶ 6.  As of the bankruptcy petition filing date, the Debtor had approximately 63 employees.  Id. ¶ 9.

On June 19, 2014, the Debtor and Appellee Parmacotto America, Inc. ("PAI") entered into an Operating Agreement (the "Agreement") governing the operation of Parmacotto-Amboy NA, LLC (the "LLC"), a limited liability company formed for the purpose of distributing Italian meats.  Certification of William Colbert (i) in Opposition to Motion of Parmacotto America, Inc. and Parmacotto Spa for Relief from Automatic Stay; and (ii) in Support of Cross-Motion for Extension of Automatic Stay ("Colbert Certif.") (ECF 146-2) ¶ 2.

The Debtor holds a 51% interest in the LLC by virtue of its obligation to contribute working capital needs on an as needed basis and purchase inventory from Parmacotto Spa ("Spa"), PAI's parent company.  The Debtor committed its management, facilities, and resources as well.  Id. ¶¶ 3-4; Motion for Relief from Stay (ECF 119-2) Exh. B § 3.1.

PAI holds the remaining 49% interest in the LLC.  In order to induce the Debtor to enter into the Agreement, PAI contributed a certain slicing machine (the "Slicing Machine") to the LLC.  The Debtor proceeded to reconfigure its facility to accommodate the Slicing Machine. More specifically, walls were physically constructed around the Slicing Machine after its installation.  Thus, it would be impossible to remove the Slicing Machine without damaging the

facility.  More importantly, the Slicing Machine accounts for approximately 25% to 30% of the Debtor's business.  Also, a replacement would cost approximately a million dollars.  Simply put, the Slicing Machine is an essential component of the Debtor's operation.  Colbert Certif. (ECF 146-2) ¶¶ 4-6; Debtor's Tr. Br. (ECF 277) at 13-16, 20 (summarizing testimony on issue).

Within two months of the execution of the Agreement, Spa, PAI's parent company, entered into an insolvency proceeding in Italy.  PAI failed to inform the Debtor of this fact, and the Debtor did not learn of it until it was later informed by a third party.  Although the Debtor attempted to contact PAI to obtain more information regarding the insolvency proceeding, these attempts were met with either silence or assurances that the company was not in financial distress.  Thus, PAI failed to reveal Spa's financial troubles to the Debtor, and as a result, misled the Debtor into agreeing to the joint venture.  Also, because of Spa's insolvency proceeding, the Debtor was unable to purchase inventory from Spa.  Colbert Certif. (ECF 146-2) ¶ 4; Debtor's Tr. Br. (ECF 277) at 7 (summarizing PAI representative's testimony on PAI's failure to provide inventory to Debtor and representative's inability to remember whether Debtor had in any way violated Agreement), at 15 (summarizing Debtor representative's testimony on PAI's failure to provide product).

**PAI Fails to Comply with the Agreement.**

In addition to providing the Slicing Machine, PAI was required to comply with other obligations under the Agreement.  Instead of performing the required acts, however, PAI breached the Agreement in several respects.  Colbert Certif. (ECF 146-2) ¶ 7.

First, accounts payable/accounts receivable that were to be turned over to the Debtor by PAI were at best incomplete and at worst fraudulent.  More specifically, PAI provided supporting documents that do not reconcile with the accounts receivable.  Also, a large portion of

the accounts receivable was uncollectable, either because it had already been paid, or because PAI had failed to perform resulting in a set-off, or there was a side agreement that was not disclosed to the Debtor and that hindered collection.  At the same time, the accounts payables were incomplete and it eventually became clear that no accounts payable had been paid since the beginning of discussions between the parties.  Indeed, the Debtor was told by PAI's former controller that he had been directed by PAI's CEO in or about May 2014 not to pay any bills. Id.; Debtor's Tr. Br. at 15, 18-19 (summarizing testimony on issue).

Second, on almost a daily basis, the Debtor discovered new, exclusivity, side, or buy back agreements that PAI had made with customers to carry its products that were not disclosed to the Debtor.  In fact, the LLC still owes Costco $35,000 for marketing allowances.  Colbert Certif. (ECF 146-2) ¶ 8; see also Debtor's Tr. Br. (ECF 277) at 8-9 (summarizing admissions by PAI representative that PAI had breached Agreement through sales with third parties), 15-16 (summarizing Debtor representative's testimony on issue), 19 (summarizing Debtor controller's testimony on issue).

Third, unbeknownst to the Debtor, PAI's sales were made first through a secondary sales organization that was paid on sales, then through brokers who were paid on their sales, and in some cases then through a distributor that also received a piece of the sales.  Additionally, PAI was paying several thousands of dollars a month for storage of spoiled product in California to reflect increased inventory values.  Colbert Certif. (ECF 146-2) ¶ 9.

Fourth, the Debtor was constantly pressured by Spa and PAI's CEO and eventually by its attorneys to provide access to the LLC's bank account, presumably to use the funds to pay PAI own debts or to transfer funds to Italy.  Id. ¶ 10; Debtor's Tr. Br. (ECF 277) at 19 (summarizing Debtor controller's testimony on issue).

Fifth, PAI attempted to transfer to the Debtor for payment an extraordinary amount of inventory that had either expired or that was very close to expiring, or for which it had no customer, or for which the Debtor had no opportunity to timely find a customer.  PAI attempted to transfer this inventory onto the LLC's books and ultimately claimed payment was due on the product.  Upon inspection of the product at the time of delivery to the LLC's facility, the LLC was ultimately forced to dispose of the product on the basis that it was out of date in accordance with USDA regulations.  The expense of the product disposal was taken on by the LLC.  Colbert Certif. (ECF 146-2) ¶ 11; Debtor's Tr. Br. at 19 (ECF 277) (summarizing testimony on issue).

Sixth, some of PAI's product consisted of mere empty boxes that PAI initially wanted counted as inventory.  The Debtor was notified of this failure by a customer who was shipped product.  This failure destroyed the Debtor's credibility with numerous parties.  Colbert Certif. (ECF 146-2) ¶ 12; Debtor's Tr. Br. at 19 (ECF 277) (summarizing testimony on issue).

Seventh, the business contributed by Spa relied to a great extent on sales of prosciutto, which it sold at a large net loss.  Under the Agreement, PAI was to provide product to the LLC net 45 of customs clearance at Amboy.  After the Agreement was signed, however, the Debtor was instructed to instead directly contact PAI's supplier and arrange terms.  Some suppliers refused to work with the Debtor due to its connections with PAI and others demanded pre-payment or payment before product left their facilities.  Colbert Certif. (ECF 146-2) ¶ 13; Debtor's Tr. Br. at 14 (ECF 277) (summarizing testimony on issue).

Eighth, PAI demanded immediate payment or sometimes pre-payment prior to production so that it could purchase raw materials.  And even when payment was offered, PAI still failed to produce materials in a timely fashion, which necessitated transit by air rather than

by sea, which is considerably less expensive and it ultimately led to the loss of major accounts. Colbert Certif. (ECF 146-2) ¶ 14.

Finally, despite receiving a generous salary, the LLC's CEO spent at least 75% of his time working on PAI or other matters unrelated to the LLC. Id. ¶ 15.

As a result of these and other issues, the Debtor was unable to reassure its investors that assets would not be taken from the LLC or that a bank would not be ordered to freeze or turnover cash in the LLC accounts. Accordingly, a group of investors withdrew their backing of not only the LLC but also the Debtor. This situation caused harm to both businesses. Id. ¶ 16.

**The Debtor Files Bankruptcy Petition;**
**Bankruptcy Court Grants Parmacotto's Motion and Denies the Debtor's Cross-Motion.**

On October 25, 2017, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Petition (ECF 1).

On March 6, 2018, PAI and Spa (collectively, "Parmacotto") filed a Motion for Relief from the Automatic Stay to obtain possession of the Slicing Machine, even though they had never objected to the Debtor's use of the machine for years. Motion (ECF120).

On March 20, 2018, the Debtor filed a Cross-Motion for an extension of the automatic stay to include the LLC. Cross-Motion (ECF 146).

On May 23, 2018, May 24, 2018, and June 11, 2018, the Bankruptcy Court held evidentiary hearings on Parmacotto's Motion and the Debtor's Cross-Motion. Tr. of May 23, 2018 Hearing (ECF 251); Tr. of May 24, 2018 hearing (ECF 252); Tr. of June 11, 2018 hearing (ECF 268).

At the May 23 hearing, Parmacotto's sole witness was neither knowledgeable nor credible; indeed, his testimony was riddled with inconsistencies. Debtor's Tr. Br. (ECF 277) at 5-12 (summarizing testimony).

In contrast, the Debtor's representative, controller, and expert each persuasively presented the Debtor's case.  Id. at 12-21 (summarizing testimony).

At the same time, even though Parmacotto does not even have a security interest in the Slicing Machine, the Debtor offered to make adequate protection payments to PAI and ultimately turn the machine over to PAI.  Id. at 17-18, 20-26.

On August 23, 2018, this Court denied Debtor's Cross-Motion.  Order Denying Cross Motion Extending Stay (ECF 318).

On August 28, 2018, this Court granted Parmacotto's Motion.  Order Granting Motion for Relief from Stay (ECF 339).

On August 28, 2018, the Debtor filed the present Notice of Appeal from the Bankruptcy Court's Orders.  Notice of Appeal (ECF 337).

## SUMMARY OF THE ARGUMENT

In moving for relief from the automatic stay, Parmacotto sought to recover the Slicing Machine under the Agreement, even though it had failed itself to comply with the Agreement. In short, as set forth below, not only did the Bankruptcy Court err in finding that Parmacotto, a mere unsecured creditor which lacks even a security interest in the machine, established cause for relief from the automatic stay, but it erred also in failing to recognize that the LLC and the Slicing Machine are inextricably linked with the affairs of the Debtor, and thus, that removal of the machine would substantially hinder the Debtor's reorganization effort, and thus, that the automatic stay should be extended to include the machine. Accordingly, this Court should reverse the Bankruptcy Court's decision.

## LEGAL ARGUMENT

## POINT I

### THE BANKRUPTCY COURT ERRED IN FINDING THAT PARMACOTTO ESTABLISHED CAUSE FOR RELIEF FROM THE AUTOMATIC STAY.

"The moving party bears the burden of proof on a motion for relief from the [automatic] stay." In re Ward, 837 F.2d 124, 128 (3d Cir. 1988). Thus, if the movant fails to make an initial showing of cause, the court can deny relief without requiring any further showing from the debtor. In re RNI Wind Down Corp., 348 B.R. 286, 299 (Bankr. D. Del. 2006). Here, Parmacotto fails to establish cause for relief.

Under section 362, the filing of a petition operates as "a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §

362(a)(1).  The United States Court of Appeals for the Third Circuit has noted that "[w]ithout question, the scope of the automatic stay is broad," and that "[a]ll proceedings are stayed, including judicial proceedings."  Maritime Elec. Co v. United Jersey Bank, 959 F.2d 1194, 1203 (3rd Cir. 1991).

The automatic stay is considered "one of the most fundamental protections granted the debtor under the Bankruptcy Code."  Midlantic Nat'l. Bank v. NJDEP, 474 U.S. 494, 503, reh'g denied, 475 U.S. 1090 (1986); accord In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.2d 631, 637 (3d Cir. 1998).  As the legislative history of the Code provides, the stay "gives the debtor a breathing spell from [its] creditors. . . . It permits the debtor . . . to be relieved of the financial pressures that drove [it] into bankruptcy."  1978 U.S.C.C.A.N. 5787, 5840-41.  The automatic stay also protects creditors because "[w]ithout it, certain creditors would be able to pursue their own remedies against the debtor's property," and thus, "[t]hose who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." 1978 U.S.C.C.A.N. 5787, 5835.  Put differently, "[t]he automatic stay was designed 'to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and in general, to avoid interference with the orderly interference with the orderly liquidation or rehabilitation of the debtor.'"  Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)).

Nevertheless, section 362(d)(1) provides that on request of a party in interest and after notice and a hearing, the court must grant relief from the automatic stay upon a demonstration of cause, including the lack of adequate protection of an interest in property of such party in interest. 11 U.S.C. 362(d)(1).

"The most important factor in determining whether to grant relief from the automatic stay is to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984). "Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." Id.

"The classic situation in which relief from the stay is accorded is where the moving party is a *secured* party whose security is in jeopardy." In re Ronald Perlstein Enters., Inc., 70 B.R. 1005, 1009 (Bankr. E.D. Pa. 1987) (emphasis added). "There are significant counter-considerations to weigh in determining whether any unsecured creditor is *ever* entitled to proceed with a legal action against a [debtor] in any forum other than the bankruptcy court in any circumstances . . . ." Id. See also In re Telegroup, 237 B.R. 87, 92-93 (Bankr. D.N.J. 1999) (denying motion for relief from stay where inter alia, litigation of claim would forestall distribution of assets to creditors).

Here, Parmacotto, a mere alleged unsecured creditor, sought relief from the automatic stay merely to pursue litigation in state court. Under these circumstances, rather than waste the estate's resources in litigation, the parties should resolve their issues before the Bankruptcy Court. Also, as noted above, the Slicing Machine is a critical component of the Debtor's operation. Thus, relief from the stay will have an adverse effect not only on administration of the estate but reorganization itself.

Second, Parmacotto makes no attempt to address the so-called "Curtis" factors required in an analysis of a motion for relief from the automatic stay. In re Curtis, 40 B.R, 795, 799-800 (Bankr. D. Utah 1984).

Third, Parmacotto cited only In re Tudor Motor Lodge Assocs. Ltd. P'ship in support of its argument.  Motion (ECF 120) ¶¶ 15-16 (citing 102 B.R. 936, 954 (Bankr. D.N.J. 1989)).  Any reliance on Tudor is misplaced, however.  In Tudor, the court, noting the "balance of hurt," granted relief from the automatic stay to allow a franchisor to terminate a franchise agreement because in the absence of relief the franchisor and its reputation would have continued to suffer harm as a result of the debtor's failure to meet its obligations under the agreement.  102 B.R. at 955-57.  Here, in contrast, Parmacotto fails to identify any harm or loss of adequate protection that it will suffer if relief is denied.  In truth, as noted above, it is the Debtor that will suffer grave harm if relief is granted.  Thus, the balance of harm militates strongly in favor of the Debtor.

Fourth, under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach.  Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 136 (2d Cir. 2016).  Here, as noted above, PAI breached the Agreement, which is governed by New York law, in several different ways.  These breaches preclude Parmacotto from now seeking to enforce the Agreement.  At the very least, the Bankruptcy Court should have preserved the automatic stay pending resolution of the parties' corporate dispute.

Next, conspicuously absent in Parmacotto's Motion was any reference to section 362(d)(2), pursuant to which a court must grant relief from the automatic stay with respect to certain property if the property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).   Parmacotto effectively conceded that the Slicing Machine is necessary to an effective reorganization.  This fact further militates against relief.  See, e.g., In re Gyro-Trac (USA), Inc., 441 B.R. 470, 489 (Bankr. D.S.C. 2010) (denying secured creditor's motion for relief from automatic stay because although debtor lacked equity in collateral, debtor needed its

inventory, equipment, and other assets to continue operating, and thus, such property was necessary for effective reorganization); Prudential Ins. Co. of Am. v. Erie Hilton Joint Venture (In re Erie Hilton Joint Venture), 112 B.R. 750, 753-54 (Bankr. W.D. Pa. 1990) (denying mortgagee's motion for relief from automatic stay despite lack of equity in property, on basis that "[t]he Hotel Property is Hilton's only asset," "[g]ranting [mortgagee] relief from stay precludes recovery for any other creditors," "[w]ithout the Hotel Property, there can be no reorganization," and "[t]here [was] no evidence to indicate that any depreciation of the Hotel Property [was] not more than offset by appreciation during a short period of time"); In re Pine Trace Corp., 87 B.R. 695, 697 (Bankr. M.D. Fla. 1988) (denying mortgagee's motion for relief from automatic stay because although mortgagee facially established grounds for relief, real estate was debtor's sole asset and debtor would be given opportunity to proceed to confirmation).

Finally, insofar as Parmacotto alleged that the Agreement was not listed as an executory contract, and hence, that the Agreement is not subject to assumption, the Debtor did list its interest in the LLC. Amended Schedules (ECF 125). Further, when a debtor files an application to amend a voluntary petition, the court's only role under Bankruptcy Rule 1009 is to decide who should receive notice of the amendment. The court does not have discretion to deny leave to amend or to require a showing of good cause. See, e.g., In re Gershenbaum, 598 F.2d 779, 781 (3d Cir. 1979) (interpreting predecessor of Rule 1009 and reversing order disallowing amendment of petition); In re Gannon, 25 B.R. 360, 362 (Bankr. D.N.J. 1982) (applying former Rule 110, now Rule 1009, and allowing amendment of schedule of creditors). Thus, here, the Debtor can amend its Schedule G at any time to include the Agreement as an executory contract.

Accordingly, for all of these reasons, the Bankruptcy Court erred in finding that Parmacotto established cause to lift the automatic stay.

## POINT II

### THE BANKRUPTCY COURT ERRED IN DECLINING TO EXTEND THE AUTOMATIC STAY TO INCLUDE THE LLC AND THE MACHINE.

The Third Circuit has recognized that the automatic stay may be extended to nondebtor third parties where stay protection is essential to the debtor's efforts of reorganization. McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 510 (3d Cir. 1997).  See also Johns-Manville Corp v. Asbestos Litig. Group (In re Johns-Manville Corp.), 26 B.R. 420, 423 (Bankr. S.D.N.Y. 1983) (extending automatic stay to proceedings "against non-debtors where such actions would interfere with, deplete or adversely affect property of [debtors'] estates or which would frustrate the statutory scheme of Chapter 11 or diminish [debtor's] ability to formulate a plan of reorganization"), aff'd, 40 B.R. 219 (S.D.N.Y.), vacated in part, 41 B.R. 926 (S.D.N.Y. 1984).

Here, as set forth above, removal of the Slicing Machine would not only damage the Debtor's facility but it would also hamper the Debtor's operation and its prospects for reorganization.  Thus, the Slicing Machine is essential to the Debtor's operation. Under these circumstances, the Bankruptcy Court erred when it declined to extend the automatic stay to include the LLC and concomitantly the Slicing Machine.

## <u>CONCLUSION</u>

Based upon the foregoing, the Debtor respectfully requests that this Court reverse the Bankruptcy Court's Orders and grant such other and further relief as is just and equitable.

Dated:  October 29, 2018

**McMANIMON, SCOTLAND &**
  **BAUMANN, LLC**
Attorneys for Appellant Amboy Group, LLC


By:  /s/ Anthony Sodono, III
       Anthony Sodono, III

## CERTIFICATE OF COMPLIANCE
## <u>WITH BANKRUPTCY RULE 8015(a)(7)</u>

This Brief complies with the length requirement of Bankruptcy Rule 8015(a)(7) because it does not exceed 30 pages.

Dated:  October 29, 2018

By: <u> /s/ Anthony Sodono, III    </u>
     Anthony Sodono, III

4818-3729-1129, v. 2